IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH BELL,  Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 23-CV-0825 |
| K. SORBER, *et al.*,  Defendants. | : : : | |

MEMORANDUM

**HODGE, J.**                                                                                          MAY 1, 2023

Currently before the Court is an Amended Complaint filed pursuant to 42 U.S.C. § 1983 by Plaintiff Joseph Bell, a prisoner currently incarcerated at SCI Laurel Highlands, based on allegations that Bell was detained beyond the expiration date of his maximum sentence while previously incarcerated at SCI Phoenix and SCI Smithfield. (ECF No. 7.) For the following reasons, the Court will direct service of the Amended Complaint for a responsive pleading on Bell's Eighth Amendment claim for damages based on his over-detention and will dismiss Bell's remaining claims.

I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Bell's initial Complaint named three Defendants: (1) the Commonwealth of Pennsylvania; (2) K. Sorber, Superintendent of SCI Phoenix during the relevant time period; and (3) J.P. Luther, Superintendent of SCI Smithfield during the relevant time period.[1] (Compl. at 1-

---

[1] Neither Sorber nor Luther is the current Superintendent of the facility he previously headed. *See* https://www.cor.pa.gov/Facilities/StatePrisons/Pages/Phoenix.aspx (last accessed Apr. 24, 2023) (identifying Joseph Terra as the Superintendent of SCI Phoenix); https://www.cor.pa.gov/Facilities/StatePrisons/Pages/Smithfield.aspx (last accessed Apr. 24, 2023) (identifying Chad Wakefield as the Superintendent of SCI Smithfield). The Court may take judicial notice of information posted on official public websites of Government agencies.

3.)² Bell alleged that while he was incarcerated at SCI Phoenix and SCI Smithfield, he was held beyond the date of his maximum sentence, August 16, 2020, until his release in May 2021, resulting in nine months of over-detention. (*Id.* at 5.) Bell alleged that his over-detention violated his constitutional rights and sought $1.5 million in damages. (*Id.*)

After granting Bell leave to proceed *in forma pauperis*, the Court dismissed his Complaint upon screening for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *Bell v. Sorber*, No. 23-825, 2023 WL 2467856, at *1 (E.D. Pa. Mar. 10, 2023). The Court first dismissed Bell's claims against the Commonwealth and his official capacity claims against Sorber and Luther, which were essentially claims against the Commonwealth, because the Commonwealth is not a "person" for purposes of § 1983 and because those claims were barred by the Eleventh Amendment. *Id.* at *2. Turning to the claims against Sorber and Luther in their individual capacities, the Court observed that, although over-detention beyond one's sentence could establish a basis for an Eighth Amendment claim, Bell failed to "include sufficient factual allegations to state a plausible claim for deliberate indifference against Sorber and Luther." *Id.* at *3. Bell was "given an opportunity to file an amended complaint in the event he [could] plead additional facts about the events and circumstances underlying his over-detention to state a basis for a plausible claim." *Id.* at *4.

Bell returned with an Amended Complaint naming the following Defendants: (1) Sorber; (2) Luther; (3) Counselor Warren, an employee of the Department of Correction ("DOC") at SCI

---

*See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020).

² The Court adopts the pagination supplied by the CM/ECF docketing system.

Smithfield;[3] (4) Unit Manager Morningstar, another employee of DOC at SCI-Smithfield; (5) Theodore Warren Bishop, a DOC employee who works at the Central Office; and (6) Tracy Lynn Chilcote,[4] another DOC employee who works at the Central Office. (Am. Compl. at 1, 3-5.) The Defendants are sued in their individual and official capacities. (*Id.* at 1, 5.) Bell again raises claims based on his alleged over-detention at SCI Smithfield and SCI Phoenix, and has provided additional details about the events giving rise to those claims.

Bell alleges that on April 18, 2018, he was sentenced "to a 24 month definite/flat SIP treatment based sentence."[5] (Am. Compl. at 7.) Bell served the initial portion of his sentence at various facilities within the DOC until he was transferred to an inpatient rehabilitation center and then to a halfway house. (*Id.* at 7-8.) On July 6, 2019, Bell was arrested; a detainer was lodged against him and he was returned to the custody of the DOC. (*Id.* at 8.) The Complaint indicates that charges were filed against him, but that those charges were ultimately dismissed on August 17, 2019, at which point Bell was returned to a halfway house to continue serving his sentence. (*Id.*)

On October 29, 2019, Bell "chose to abscond due to the unfair treatment he was receiving at the SIP halfway house"; he was arrested on February 23, 2020 and incarcerated within the

---

[3] It appears that Warren was unintentionally omitted from the caption, but it is clear that he is named as a Defendant in the body of the Amended Complaint.

[4] It appears this Defendant's name is misspelled in the caption of the Amended Complaint.

[5] "State Intermediate Punishment (SIP) is a two year sentence designed mainly for individuals convicted of drug-related offenses. During the two year sentence, the offender must serve at least seven months in a state correctional facility, a minimum of two months in a community based therapeutic community (half-way house which provides drug treatment programming), and at least six months in outpatient treatment." https://pcv.pccd.pa.gov/available-services/Pages/Flow-state-Prison-and%20-Parole/State-Intermediate-Punishment.aspx (last accessed Apr. 25, 2023).

Philadelphia Prison System. (*Id.* at 9-10.) A detainer was lodged against Bell on March 6, 2020, but "all charges were [subsequently] dismissed" on September 11, 2020. (*Id.* at 10.) It appears, however, that Bell remained incarcerated and, on February 11, 2021, he was transferred to SCI Smithfield. (*Id.* at 10-11.) On February 18, 2021, Bell's sentence was recalculated to account for the time he absconded, and his maximum release date was updated to August 16, 2020 as reflected on a DC16E – Sentence Status Summary sheet, of which Bell received a copy. (*Id.* at 11 & 32-33.) The calculation was performed by Defendant Bishop. (*Id.* at 17.) On February 19, 2021, Bell wrote "numerous inmate request slips" to the records office, the SIP coordinator, Defendant Unit Manager Morningstar, and Defendant Counselor Warren noting that the paperwork he received showed that "his sentence was complete and there were no detainers lodged against him." (*Id.* at 11-12.) Bell also "verbally addressed" Morningstar and Warren about the issue on February 19, 2021, to which Morningstar allegedly responded "'that's above my pay grade.'" (*Id.* at 12.) Warren allegedly responded "'My [expletive] job does not consist of time calculations so stop kicking your [expletive] door.'" (*Id.*) Bell also addressed an inmate request to Defendant Luther but did not receive a response. (*Id.* at 13-14.) According to Bell, DOC policy required inmates to submit an inmate request slip or use "spoken word" to address matters related to their sentence. (*Id.* at 20.) When he sought a grievance form from Warren, he was told that "time calculations are not grievable." (*Id.* at 13.)

On March 16, 2021, Bell was transferred to SCI Phoenix. (*Id.* at 14.) Five days prior to his transfer, Bell received a second DC-16E Sentence Status Summary, which indicated that his sentence was last calculated as of February 19, 2021 and was complete as of August 16, 2020, and also reflected that a new detainer that was lodged against Bell on March 9, 2021. (*Id.* at 15, 39-41.) The report indicates that it was last modified by and last signed off on by Defendant

4

Chilcote. (*Id.* at 41.) On March 17, 2021, Bell wrote "inmate request slips" to the records office, the SIP coordinator, various counselors, and Defendant Superintendent Sorber, but he never received a response. (*Id.* at 14.) Two months later, non-defendant Counselor Watson informed Bell that he would be transferred to the Bucks County Prison on May 19, 2021, and allegedly stated, regarding Bell's over-detention, that "'somebody [expletive] up, contact a lawyer as soon as you get on the street.'" (*Id.* at 15.)

Bell contends that since his sentence maxed out on August 16, 2020, he was beyond the time the DOC could hold him on a detainer, and notes that he was never deemed a "SIP failure nor charged . . . with escape for absconding."[6] (*Id.* at 15-16.) He alleges that his detention at SCI Smithfield and SCI Phoenix beyond the expiration of his maximum sentence violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments.[7] (Am. Compl. at 24-25, 27.) In that regard, Bell notes that although the recalculation of his sentence on February 18, 2021 resulted in a maximum date of August 16, 2020, approximately six months prior, he was not released at that time. (*Id*. at 17-19.) Additionally, according to Bell, neither the Defendants who updated his sentencing paperwork nor those he informed about the issue in accordance with DOC policy took any steps to address his over-detention. (*Id* at 21.) Bell also asserts that his First and Eighth Amendment rights were violated by Defendant Warren when Warren refused to

---

[6] Bell also "believes" that he was transferred among facilities to prevent him from documenting the DOC's failures and contends that carbon copies of the request slips he sent regarding his sentence were destroyed when he was released to the custody of Bucks County Prison. (Am. Compl. at 16.)

[7] The Amended Complaint also makes a stray reference to the Ninth Amendment, (Am. Compl. at 6), but this claim is not developed and, in any event, the Court cannot discern any basis for a Ninth Amendment violation here. *See Bowens v. Matthews*, 765 F. App'x 640, 644 (3d Cir. 2019) (*per curiam*) (summarily affirming where inmate "ha[d] not alleged the violation of any specific fundamental right that might be protected by the Ninth Amendment").

provide him with a grievance form, which made "administrative remedies policies and procedures" unavailable to Bell.[8]  (Am. Compl. at 26-27.)  Bell seeks a declaration that his rights were violated, an injunction requiring the DOC to reform its procedures, and damages.  (*Id.* at 28-29.)

## II.   STANDARD OF REVIEW

Since Bell is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir.

---

[8] Bell also alleges that the DOC failed to comply with its own policies regarding inmates serving SIP sentences.  (Am. Compl. at 21.)  The DOC's alleged failure to follow its own policy does not, without more, equate to a constitutional violation.  *See, e.g., Conaway v. McAfee-Garner*, No. 19-619, 2019 WL 5595244, at *2 (D. Del. Oct. 30, 2019) ("Plaintiff argues that the dismissed defendants failed to follow Delaware Department of Correction policy for grievances, but the mere failure of prison officials to follow their own regulations in itself is not a constitutional violation." (citing *Tennille v. Quintana*, 443 F. App'x 670, 672 n.2 (3d Cir. 2011) (*per curiam*)); *McBride v. Cnty. of Atl., N.J.*, No. 10-2773, 2013 WL 1501793, at *9 (D.N.J. Apr. 10, 2013) ("[E]vidence that the CFG medical staff failed to follow the written CFG policy is not, on its own, evidence of an underlying constitutional violation.").  Accordingly, any independent claims based on this allegation will be dismissed.

6

2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Bell is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.  DISCUSSION

#### A.  Claims For Injunctive and Declaratory Relief

Bell's claims for declaratory and injunctive relief are improper.  Declaratory judgments are unavailable to litigants who seek a proclamation that their rights were violated in the past, as Bell requests in this case.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  Similarly, since Bell's claims are predicated on past conduct, he lacks standing to pursue claims for prospective injunctive relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) ("To show irreparable harm, the party seeking injunctive relief must at least demonstrate that there exists some cognizable danger of recurrent violation of its legal rights." (internal quotations omitted)); *Clarke v. D'Amico*, No. 04-3950, 2005 WL 1252258, at *2 (D.N.J. May 24, 2005) (request for injunction directing prison officials to provide prisoners with a handbook about the parole process was "not cognizable under § 1983, however, because Plaintiff lacks standing to seek injunctive relief on behalf of prisoners since he was released on parole" before he filed his

complaint). Accordingly, the Court will dismiss Bell's claims for declaratory and injunctive relief and will address his remaining damages claims below.

### B. Official Capacity Claims for Damages

States are not considered "persons" who may be liable under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity for claims under § 1983. *See* 42 Pa. Cons. Stat. § 8521(b). As noted in the Court's prior Memorandum in this case, *Bell*, 2023 WL 2467856, at *2, these principles preclude damages claims against Commonwealth employees in their official capacities, such as those raised against the Defendants in this case, because such claims are treated as claims against the Commonwealth. *See Kokinda v. Pa. Dep't of Corr.,* 779 F. App'x 944, 948 (3d Cir. 2019) (*per curiam*) ("The District Court properly concluded that Kokinda's claimed violations of §§ 1983, . . . against the DOC and the individual prison staff members sued in their official capacities are barred by the Eleventh Amendment."); *Collins v. Sload*, 212 F. App'x 136, 140 n.5 (3d Cir. 2007) (*per curiam*) ("We also agree with the District Court that Eleventh Amendment immunity provided the defendants a similar shield against the claims for damages against them in their official capacities under §§ 1983, 1985, & 1986."); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotations omitted)). Accordingly, Bell's damages claims against the Defendants in their official capacities must be dismissed.

### C.  Individual Capacity Claims for Damages Based on Grievance Process

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Bell alleges that Defendant Warren denied him access to the grievance process in violation of his constitutional rights.  However, "[p]rison inmates do not have a constitutionally protected right to a grievance process," so Bell cannot state a constitutional claim based on this allegation or any other allegations related to his inability to access the grievance process. *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*).  Accordingly, the Court will dismiss Bell's claims predicated on allegations that his inability to grieve his over-detention equated to an independent constitutional violation. *See Woods v. First Corr. Med. Inc*., 446 F. App' x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

### D.  Individual Capacity Claims for Damages Based on Over-detention

The primary thrust of Bell's Amended Complaint is that his alleged over-detention violated his constitutional rights. "An inmate's detention after his term of imprisonment can, under certain circumstances, constitute cruel and unusual punishment, in violation of the Eighth

9

Amendment."[9]  *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017); *see also Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and usual punishment.").  To state a claim for over-incarceration without penological justification, a prisoner must allege plausibly that:

> (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention.

*Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010).  "'Among the circumstances relevant to a determination of whether the requisite attitude was present are the scope of the official's duties and the role he or she has played in the everyday life of the prison.'"  *Wharton*, 854 F.3d at 242 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)).  "An official is less likely to display deliberate indifference if 'there are procedures in place calling for others to pursue the matter' and more likely to be deliberately indifferent if given his or her role, a problem 'will not likely be resolved unless he or she addresses it or refers it to others[.]'"  *Id.*

---

[9] Bell also cites the Fifth and Fourteenth Amendments as grounds for his over-detention claims. However, "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials," so there is no basis for a Fifth Amendment claim here.  *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*); *see also Hall v. Nisbit*, No. 21-2139, 2022 WL 910339, at *2 (3d Cir. Mar. 29, 2022) (*per curiam*) ("The Fifth Amendment Due Process Clause applies to federal officials, and none of the Appellees are.") (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)).  Nor is there a basis for a Fourteenth Amendment claim here because the Court of Appeals for the Third Circuit has applied the Eighth Amendment, rather than the Fourteenth Amendment, to over-detention cases involving convicted and sentenced inmates such as Bell. *Wharton*, 854 F.3d at 246-47 ("Our Court has always analyzed over-detention claims under the Eighth Amendment, unlike some other courts.").  Accordingly, Bell's Fifth and Fourteenth Amendment claims will be dismissed.

(quoting *Sample*, 885 F.2d at 1110). However, the Eighth Amendment does not require the elimination of all risk of error in this context. *Id.* at 241.

Furthermore, to be liable in a civil rights action "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton*, 854 F.3d at 243. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Bell has alleged that Defendant Bishop recalculated his sentence on February 18, 2021 to reflect a maximum sentence date of August 16, 2020 but that Bell nevertheless remained improperly incarcerated at SCI Smithfield. Bell claims that he notified Defendants Morningstar, Warren and Luther in accordance with the relevant DOC procedures the day after he received the paperwork reflecting his updated sentence calculation, but that none of those individuals looked into his allegations of over-detention. Bell's sentencing paperwork was updated again in March 2021 by Defendant Chilcote and, although it reflected issuance of a detainer against Bell, Bell asserts that the DOC lacked the authority to hold him on a detainer because his maximum

sentence had expired. Bell submitted an inmate request slip to Superintendent Sorber the next day, allegedly in accordance with DOC policy, to address this issue but did not receive a response. Based on these allegations, Bell has alleged sufficient facts to proceed on his Eighth Amendment over-detention claim at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court will direct service of Bell's Amended Complaint on the Defendants so that they may respond to Bell's Eighth Amendment claim for damages based on his alleged over-detention. The balance of the Amended Complaint will be dismissed. Bell will not be given leave to file an amended complaint as to his dismissed claims because the Court concludes that amendment of the dismissed claims would be futile. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**